1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:12-cr-237-APG-CWH |
| Plaintiff, | |
| v. | **ORDER** |
| JOSEPH ANDRADE, et al., | (Def.'s Motion for Acquittal or New Trial – Dkt. #280; Def.'s Motion for Acquittal – Dkt. #283) |
| Defendants. | |

## I.    SUMMARY

Before the Court is Defendant Julian Gaytan's ("Defendant Gaytan") Renewed Motion for Judgment of Acquittal or, in the Alternative, Motion for New Trial. (Dkt. #280.) Defendant Joseph Andrade joined in the motion. (Dkt. #282). Also before the Court is Defendant Joseph Andrade's ("Defendant Andrade") Motion for Judgment of Acquittal. (Dkt. #283.) Defendant Gaytan joined in that motion. (Dkt. #284.) The Court has considered the United States of America's ("the Government") omnibus opposition and the Defendants' reply and supplements.[1] For the reasons discussed below, the Defendants' motions are granted in part and denied in part. Specifically, the Defendants' convictions on Count Four of the Indictment are vacated.

/ / / /

/ / / /

/ / / /

---

[1] The Court refers to Defendants Andrade and Gaytan collectively as "Defendants."

**II.  BACKGROUND**

This is a criminal case against Defendants Joseph Andrade and Julian Gaytan[2] arising from Defendants' travel in interstate commerce to commit a crime of violence as defined by the Travel Act, 18 U.S.C. § 1952. The four-count Indictment charged that Defendants conspired to (and did) travel from Arizona to Nevada to engage in a residential burglary for the purpose of extorting money from the occupants of the residence. (Dkt. #1.) Defendants drove from Arizona to a residence in North Las Vegas, where Ms. Ramirez knocked on the front door and asked for an occupant of the home by name. (*Id.* at 2.) Once the door was opened, the male Defendants entered the residence brandishing guns. (*Id.*) The male Defendants ordered the occupants of the home to the floor and demanded money, threatening harm if the occupants did not comply. (*Id.*) The male Defendants ransacked the home and stole cash, cellular telephones, jewelry, and other property before fleeing. (*Id.* at 3.)

Many issues were litigated pre-trial, including motions to sever trial, suppress evidence and statements, and to dismiss charges for failure to state an offense and as being multiplicitous. Relevant to the issues addressed in this Order, the Court denied severance, suppressed certain evidence, and allowed all of the charges in the Indictment to proceed to trial. After a 10-day jury trial, on September 20, 2013 the jury returned a guilty verdict on all four counts against Defendants Gaytan and Andrade. (Dkt. #258.) Defendants timely filed the motions addressed herein.

**III.  DISCUSSION**

The Indictment charged: (1) Conspiracy to Travel in Interstate Commerce in Furtherance of Racketeering Activity, in violation of 18 U.S.C § 371; (2) Brandishing a Firearm in Furtherance of a Crime of Violence, specifically the crime of violence charged in Count 1, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 18 U.S.C. § 2; (3) Interstate Travel in Aid of Racketeering Activity, in violation of 18 U.S.C. § 1952(a)(2)(B) and 18 U.S.C. § 2; and (4)

---

[2] Two additional defendants were charged in the Indictment: Perla Ramirez and David Duran. Ms. Ramirez accepted a plea agreement and testified on behalf of the Government. Duran was recently apprehended and has not faced trial.

1    Brandishing a Firearm in Furtherance of a Crime of Violence, specifically the crime of violence

2    charged in Count 3, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 18 U.S.C. § 2.

3            Where two or more persons conspire to commit an offense against the United States, and

4    at least one of those persons commits an overt act in furtherance of the conspiracy, all persons

5    who conspired are criminally liable. 18 U.S.C. § 371. One such offense can be a violation of the

6    Travel Act, enumerated at 18 U.S.C. § 1952. The Travel Act provides that any person who

7    travels in interstate commerce with the intent to commit any crime of violence to further an

8    unlawful activity, is criminally liable. 18 U.S.C. § 1952(a)(2)(B). A crime of violence is "an

9    offense that has as an element the use, attempted use, or threatened use of physical force against

10   the person or property of another," or any other felony "that, by its nature, involves a substantial

11   risk that physical force against the person or property of another may be used in the course of

12   committing the offense." 18 U.S.C. § 16; 18 U.S.C. § 924(c)(3). Burglary, as defined by Nevada

13   law, is a crime of violence. *See Lopez-Cardona v. Holder*, 662 F.3d 1110, 1112 (9th Cir. 2011)

14   (holding California Penal Code § 459 is a crime of violence); *compare* Cal. Penal Code § 459

15   *with* Nev. Rev. Stat. § 205.060 (the two statutes are substantially similar). Extortion is an

16   unlawful activity. 18 U.S.C. § 1952(b)(2). Additional sentence enhancements are imposed on

17   "any person who, during and in relation to any crime of violence . . . uses or carries a firearm." 18

18   U.S.C. § 924(c)(1)(A-C). "[I]f the firearm is brandished" during the commission of the crime of

19   violence, the enhancement is seven years. *Id.* Where there is a "second or subsequent conviction"

20   under § 924(c) for the use of a firearm during the commission of a crime of violence, an

21   additional 25-year sentence is imposed, to run consecutively to any other term of imprisonment.

22   *Id.* at § 924(c)(1)(C-D).

23           Defendants have moved for acquittal of all charges under Rule 29, arguing the

24   Government failed to prove its case-in-chief. Alternatively, Defendants have moved for a new

25   trial under Rule 33 based on newly discovered evidence, weight of the evidence, Government

26   misconduct, and the Court's reversible error. Defendants also ask the Court to vacate Count Four

27   as duplicative of Count Two.

28

                                                    3

1

### A. Rule 29 – Motions for Acquittal

2       When determining the sufficiency of the evidence under Rule 29, the Court first must

3   construe the evidence "in the light most favorable to the prosecution . . . then determine whether

4   any rational trier of fact could have found the essential elements of the crime beyond a reasonable

5   doubt." *United States v. Ramos-Atondo*, 732 F.3d 1113, 1121 (9th Cir. 2013)(citing *United States*

6   *v. Nevils*, 598 F.3d 1158, 1161 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S.

7   307, 319 (1979))).  However, the Court may not "assume the function of the jury to make

8   credibility determinations." *Id.*; *see also Nevils*, 598 F.3d at 1170 ("We cannot second-guess the

9   jury's credibility assessments; rather, 'under Jackson, the assessment of the credibility of

10  witnesses is generally beyond the scope of review.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 330

11  (1995))).

12      Defendants make several arguments in favor of acquittal based on the insufficiency of the

13  evidence.  Gaytan repeats these arguments multiple times throughout his motion, including as part

14  of the arguments in favor of a new trial.  As discussed below, none of these arguments is

15  persuasive or sufficient to disrupt the jury's verdict.

16

### 1. Crime of Violence and Unlawful Activity

17      Defendants argue that the Government has failed to prove a "crime of violence" to further

18  some other "unlawful activity" because the Government failed to prove any extortionate act

19  outside of the robbery of the house. (Dkt. #283 at 5:19-8:14.)  Defendants frame the burglary and

20  extortion as a single crime of robbery: one course of conduct, one decision, and thus one crime.

21  Defendants urge the Court to find that a single act cannot satisfy both the "unlawful activity" and

22  the "crime of violence" prongs of the Travel Act.

23      However creatively Defendants frame the events, invading a home with intent to steal or

24  commit an assault or a felony is burglary, and that act is separate from the act of obtaining

25  property by threat or force, which is extortion.  Burglary was completed the moment Defendants

26  entered the home. (Dkt. #260 at 21:11-14.)  Extortion need not occur within a home at all.

27  Therefore, this argument fails.

28

1

### 2.  Where the Plan was Formed

2        Defendants argue the Government failed to prove that the Defendants formed a plan to rob

3   the house before leaving Arizona; thus, the Government failed to prove that element of count one.

4   (Dkt. #283 at 8:15-9:25.) [4] Defendants focus on the statements Andrade made to Detective

5   Melgarejo, and on Ms. Ramirez's statements that she never heard any conversations about the

6   plan. Additionally, Gaytan argues the only evidence linking him to the events was the unreliable

7   testimony of Ms. Ramirez.

8        Although the statements Andrade made to Detective Melgarejo were generally

9   contradictory in nature and Ms. Ramirez's testimony was less than stellar, the Court cannot and

10  will not substitute its own credibility determinations for that of the jury.  Moreover, other

11  circumstantial evidence was presented upon which the jury could have based its convictions,

12  including the Defendants' Arizona driver's licenses, the Arizona license plates on Andrade's car,

13  and evidence from cell phone data about where and when calls were made.  Defendants' assertion

14  the Government failed to prove where the plan was formed ignores significant circumstantial

15  evidence, which was legitimately introduced and from which reasonable inferences could be

16  drawn.  The jury heard Defendants' arguments on this issue, weighed the evidence, decided what

17  to believe and what weight to give to the testimony, and reasonably concluded that Defendants

18  were guilty.  The jury found that the Government proved its case, and the Court finds no reason to

19  disrupt that conclusion.

20              ### 3.  Identification of Gaytan

21        Gaytan argues that the Government did not prove that he conspired, traveled in interstate

22  commerce, was present at the events, or carried a firearm.  Gaytan argues the only evidence that

23  identified him as a perpetrator was the unreliable testimony of Ms. Ramirez.  Again, however,

24

25  [4] Gaytan also argues that venue is thereby improper.  The Government correctly notes Federal
    Rule of Criminal Procedure 18 requires the Government to prosecute the case in the district where
26  the offense was committed. Fed. R. Crim. P. 18.  Accordingly, venue is proper here.  Moreover,
    to the extent that Gaytan makes a jurisdictional challenge, that argument is untimely. *United*
27  *States v. Powell*, 498 F.2d 890, 891 (9th Cir. 1974) ("[V]enue may be waived, . . . and where, as
    here, the objection was not raised until after the jury had returned its verdict of guilty, we find
28  that waiver did in fact occur.") (citations omitted).

1  this argument ignores the significant circumstantial evidence from which reasonable inferences

2  could be drawn, including the photo lineups,[5] cell phone records, and the presence of his wallet at

3  the scene of the crime.  The Court will not second-guess the jury's credibility assessments.  The

4  jury concluded that the Government proved its case and the Court finds no reason to disrupt the

5  convictions.

### 4. Exclusion of Every Other Reasonable Theory or Hypotheses

7  Defendants argue the evidence produced by the Government during its case-in-chief is

8  consistent with other reasonable theories or hypotheses besides guilt.  The Defendants attack the

9  Government's investigation and the credibility of the witnesses and identifications.  These

10  arguments ignore the deference that must be given to the jury's determination that Defendants are

11  guilty of the crimes.  To be sure, "[o]nce a defendant has been found guilty of the crime charged,

12  the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon

13  judicial review *all of the evidence* is to be considered in the light most favorable to the

14  prosecution." *Jackson*, 443 U.S. at 319 (emphasis in original).  Defendants argued these same

15  alternative theories to the jury, which rejected them in favor of those presented by the

16  Government.  To accept Defendants' argument would require rejecting the fact finders'

17  inferences and instead viewing the evidence in Defendants' favor.  At best, Defendants'

18  characterizations present "conflicting inferences," and the Court "must presume–even if it does

19  not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of

20  the prosecution, and must defer to that resolution." *Id.* at 326.  The Court will not disrupt the

21  jury's findings on this basis.

22  / / / /

23  / / / /

24  / / / /

---

26  [5] Gaytan notes that eyewitness testimony described "a man with his face almost entirely covered with a bandana, hat and potentially glasses who the Government posits was" him. (Dkt. no. 280 at

27  16).  Based on this description, Gaytan argues that any photo lineup identification should be disregarded.  Again, the jury considered and rejected this argument.  The Court cannot disrupt the

28  jury's credibility determinations.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B. Rule 33 – Motions for New Trial**

Defendants seek a new trial pursuant to Federal Rule of Criminal Procedure 33, which allows a court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).

### 1. Newly Discovered Evidence

A criminal defendant must satisfy a five-part test to prevail on a motion for a new trial based on newly discovered evidence: "(1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would probably result in acquittal." *United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005) (quoting *United States v. Kulczyk*, 931 F.2d 542, 548 (9th Cir. 1991)). "Evidence will not be deemed 'newly discovered' simply because it appears in a different light under a new theory. [A] party who desires to present his case under a different theory in which facts available at the original trial now first become important, will not be granted a new trial." *United States v. Hamling*, 525 F.2d 758, 759 (9th Cir. 1975) (per curiam).

Defendants argue eight newly discovered pieces of evidence warrant a new trial: (1) missing portions of witness statements, (2) identification of a fifth conspirator, (3) identity and 911 call of "Frank Garcia," (4) Arizona DMV records, (5) jail letters written by Gaytan to Ms. Ramirez, (6) the GPS device recovered from Andrade's vehicle, (7) recent allegations Andrade and his brother assaulted co-Defendant Duran and stole his wallet days before the crimes at issue, and (8) Ms. Ramirez's plea agreement called for less time than the Government told the jury. Despite Defendants' allegations that the Government's practices pervasively resulted in late-disclosed evidence, the Court's review does not support that assertion, as discussed below. Additionally, although Defendants make blanket assertions that all the newly-discovered material is relevant and will result in acquittal, Defendants have not demonstrated either.

////

1

### a. Missing Portions of Witness Statements

2   Defendants argue the second page of Misael Garcia's statement to police (containing a

3   description of the perpetrators) was not timely disclosed to the defense due to records errors by

4   the North Las Vegas Police Department. Defendants argue these descriptions "were vital to the

5   defense, would have shaped the defense theory, and could have helped to narrow the potential

6   suspects and identify alternate suspects in the case." (Dkt. #280 at 24.) Further, Defendants argue

7   this information "could have excluded Mr. Gaytan as being the assailant with a bandana and a hat

8   covering his face." (*Id.*)

9   The Court agrees with the Government that Defendants fail to articulate how those

10   descriptions were materially different from the descriptions that had been previously disclosed by

11   the Government. It is the Defendants' burden to show materiality and that the evidence would

12   probably result in acquittal. Defendants have done neither. Thus, this argument fails.

13

### b. Identification of a Fifth Conspirator

14   Defendants argue that Ms. Ramirez's eleventh-hour revelation of a fifth conspirator was

15   material and exculpatory.[6] "This unknown fifth person would be the lynchpin in the defense case.

16   He could confirm that Mr. Gaytan was not present at the scene of the crime. He could confirm

17   that the conspiracy, if one existed, was formulated in Nevada thus eliminating the interstate nexus

18   necessary to prevail on federal charges." (Dkt. #280 at 25.)

19   This argument fails for several reasons. First, it is replete with rank speculation that this

20   fifth conspirator is the savior of the Defendants, and that he will confess to being present at the

21   crime and absolve the Defendants of all liability. Second, Defendants consistently argue that Ms.

22   Ramirez is not to be believed for any reason because she is a liar, but she should be believed

23   regarding a fifth conspirator because that might exculpate the Defendants. Third, the argument

24   ignores that this fifth conspirator might inculpate Defendants, rather than exculpate them. More

25   importantly, however, the argument ignores that this fifth conspirator may not exist at all.

26

27

──────────

28   [6] The Court finds this information was promptly disclosed by the Government upon discovery.

8

1  Defendants have failed to show that this evidence probably would result in acquittal, and,

2  accordingly, this argument fails.

### c.  Identity and 911 Call of "Frank Garcia"

4  Defendants argue that the Government's failure to properly identify "Frank Garcia" must

5  result in a new trial "to allow Mr. Gaytan to conduct a proper analysis and investigation into the

6  true identity of 'Frank Garcia' and any involvement he may have had in the crimes." (Dkt. #280

7  at 26.) This argument fails because "Frank Garcia" was disclosed as a witness during initial

8  discovery. Moreover, Defendants have failed to specify what about this evidence is material and

9  how it would probably result in acquittal. Based on the evidence presented at trial, it seems

10  highly doubtful that "Frank Garcia" may also be involved in the crimes. But even if he was, that

11  does not necessarily mean that Defendants were not involved in the crimes. Defendants have

12  failed to meet their burden as to this argument.

### d.  Arizona DMV Records

14  Defendants argue the Government disclosed its intent to introduce Arizona DMV records

15  for the first time during trial, and that this constitutes newly discovered evidence requiring a new

16  trial. The Court disagrees. The Government disclosed the same information in the Arizona DMV

17  records during initial discovery in August 2012. Accordingly, this is not newly discovered

18  evidence. Additionally, despite the fact that this evidence was introduced at trial, Defendants

19  have failed to identify why early disclosures probably would have resulted in acquittal. This

20  argument is more appropriately raised under a theory of government misconduct, but fails on that

21  basis as well, as discussed below.

### e.  Jail Letters Written by Gaytan to Ms. Ramirez

23  Defendants argue that the Government's failure to disclose jailhouse letters written by

24  Gaytan to Ms. Ramirez prevented the defense from presenting a theory of vengeful jealousy.[7]

25  This evidence is, at best, merely impeaching of Ms. Ramirez's motive in testifying against

26

27

28  [7] Defendants contend Ms. Ramirez agreed to testify against them only after the Government allegedly revealed to her that Gaytan had contacted the mother of his child while in custody.

1    Defendants. However, even if Defendants had used this information to impeach Ms. Ramirez and

2    discredited part, if not all, of her testimony, this still would not have resulted in acquittal.

3    Defendants thoroughly cross-examined and impeached Ms. Ramirez based on inconsistent

4    statements and her motives (including both jealousy and the benefits of her plea agreement).

5    Defendants cross-examined Ms. Ramirez on her jealous motivations, based on Gaytan's contacts

6    with his child's mother. The letters would not have changed the result of the trial and would not

7    probably result in an acquittal if another trial were granted.

#### f.    The GPS Device in Andrade's Vehicle

9    Defendants argue that the Government's failure to disclose information about the GPS

10   device that was in Andrade's car constitutes newly discovered evidence, the disclosure of which

11   would have negated the "interstate nexus claims that provide the foundation for the indictment

12   and federal jurisdiction." (Dkt. #280 at 29:5.) Defendants argue that, even though the car had

13   Arizona plates, "the assumption that the vehicle must have recently traveled from Arizona is

14   preposterous." (*Id.*)

15   Defendants undermine their own argument by stating that "Las Vegas is a well-known

16   tourist area where license plates from different states . . . are commonplace. In fact, campaigns

17   have been waged by law enforcement o [*sic*] compel registration of out of state vehicles." (*Id.* at

18   29:10-13.) There is nothing preposterous about assuming the Defendants drove the car from

19   Arizona shortly before the crime. If Defendants would have been forced to register the out of

20   state vehicle under one of the campaigns Defendants reference, it would be more likely that the

21   car had recently traveled from Arizona because it had not been registered. Moreover,

22   Defendants' assertion that the GPS would have shown the home of the fifth conspirator fails for

23   the same reasons discussed above, i.e. it is based solely on speculation, it inconsistently argues

24   about Ms. Ramirez's credibility, and it ignores that the fifth conspirator may not even exist.

25   Defendants have not shown that this new evidence probably would result in an acquittal at a new

26   trial. Accordingly, this argument fails.

27   / / / /

28

10

1

### g. Statements by David Duran's Sister

2       In his First Supplement to his Motion, Gaytan argues that he is entitled to a new trial

3   because the sister of co-Defendant David Duran recently testified that Duran does not know

4   Gaytan, and that Duran's wallet was stolen by co-Defendant Andrade and his brother a few days

5   before the crimes at issue in this case. (Dkt. #305 at 3:1-5.)   Gaytan contends that this evidence

6   was the reason that the Magistrate Judge released Duran from pre-trial custody, proving that it is

7   exculpatory evidence; because both Duran's and Gaytan's wallets were found at the scene of the

8   crime, this evidence must be similarly exculpatory of Gaytan. (*Id.* at 4:25-28).  Gaytan's logic is

9   faulty for several reasons. First, there is no evidence that Duran was released from custody based

10  solely (or even primarily) on the allegations that Andrade assaulted him and stole his wallet.

11  Moreover, even if Duran's wallet was at the crime scene solely because Andrade or his brother

12  stole it, this does not exculpate Gaytan.  The mere fact that both Duran's and Gaytan's wallets

13  were found in the same vehicle does not provide and "connection" or proof that Gaytan's wallet

14  was likewise stolen. (*Id.* at 4:22-24.)  Finally, Gaytan's argument that "the Government convicted

15  Mr. Gaytan almost entirely based upon the fact that a wallet containing his identifiers was found

16  at the scene of the crime" (*Id.* at 4:21-22.) ignores the significant other evidence against him

17  presented at trial.  Gaytan's argument fails.

18

### h. Ms. Ramirez's Plea Agreement

19      In his Second Supplement to his Motion, Gaytan argues that the Government

20  misrepresented to the jury that Ms. Ramirez faced 20 years in prison through her plea agreement,

21  when in reality she faced no more than five years. (Dkt. 322 at 5:14-27.)  Gaytan argues that had

22  the jury known the true amount, her "testimony may have been entirely disregarded. . . . This

23  inaccuracy caused the jury to misunderstand the full extent of the plea agreement, the deal that

24  Ms. Ramirez received, and the motivations for Ms. Ramirez' testimony." (*Id.*)  Gaytan contends

25  that "Ms. Ramirez' testimony may have been entirely disregarded had the jury been completely

26  apprised of the fact that she faced only a five year maximum and that her testimony could likely

27  result (as it nearly did) in a sentence of time served following her performance at trial." (*Id.* at

28

1  5:17-19.)  At most, this is "merely impeachment" evidence, which does not justify a new trial.

2  *Harrington*, 410 F.3d at 601.  Although Gaytan contends that this new information "would

3  exculpate Mr. Gaytan," he fails to show how it would "probably result in acquittal" at retrial. *Id.*

4  ### 2.  Weight of the Evidence

5  A district court's power to grant a motion for a new trial is much broader than its power to

6  grant a motion for judgment of acquittal. *See* 3 Charles Alan Wright, Fed. Prac. & Pro. § 553 at

7  245 (1982).

8  > The district court need not view the evidence in the light most favorable to
9  > the verdict; it may weigh the evidence and in so doing evaluate for itself
   > the credibility of the witnesses. If the court concludes that, despite the
   > abstract sufficiency of the evidence to sustain the verdict, the evidence
10 > preponderates sufficiently heavily against the verdict that a serious
   > miscarriage of justice may have occurred, it may set aside the verdict,
11 > grant a new trial, and submit the issues for determination by another jury.

12  *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992).

13  Defendants make several additional arguments for a new trial, generally categorized under

14  the topic that the verdicts are against the "weight of the evidence," although none of them truly

15  relates to the weight of the evidence or credibility of the witnesses. (Dkt. #280 at 29:20-30:4.)

16  Instead, the arguments focus on alleged government misconduct in discovery and investigation,

17  and objections to the Court's evidentiary rulings.  To the extent that Defendants' prior arguments

18  are incorporated for consideration under this standard, the Court denies the motion.  The evidence

19  does not preponderate against the verdict to lead to the conclusion that a miscarriage of justice

20  may have occurred, regardless of the alleged veracity of Ms. Ramirez's testimony.[8]

21  ### a.  Government Misconduct

22  A district court may exercise its supervisory powers to dismiss an indictment in response

23  to investigatory or prosecutorial conduct that falls short of a due process violation.  *United States*

24  *v. Ross*, 372 F.3d 1097, 1109 (9th Cir. 2004) (relating to outrageous government conduct); *see*

25

26  ---

27  [8] Defendants continually refer to Ms. Ramirez's admission during cross-examination that she lied
   to the jury as evidence that Ms. Ramirez's entire testimony must be discredited.  However, even if
   Ms. Ramirez's testimony is completely disregarded, other sufficient evidence was presented to
28  support the jury's verdict.

1   *also United States v. Barrera-Moreno*, 951 F.2d 1089, 1092 (9th Cir. 1991) (relating to

2   investigation and prosecution).  To justify a new trial, prosecutorial misconduct must: (1) be

3   flagrant and (2) cause substantial prejudice to the defendant.  *Ross*, 372 F.3d at 1110; *Barrera-*

4   *Moreno*, 951 F.2d at 1091.  Flagrant misbehavior does not include accidental or merely negligent

5   governmental conduct, but may embrace reckless disregard for constitutional obligations.  *United*

6   *States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008).  Although Defendants make broad,

7   conclusory allegations that they were prejudiced by alleged misconduct, they do not explain

8   exactly how they were substantially prejudiced, other than by speculating how things may have

9   been different.  For this reason alone, the motions may be denied.  Regardless, the Court

10   addresses each of Defendants' arguments.

11   ### i.  Duty to Expedite Litigation

12   Defendants claim the Government failed to expedite litigation because it moved to

13   exclude Defendant's eyewitness expert testimony on the first day of trial, rather than in the 90

14   days prior to trial during which the Government was on notice of the expert witness.  Defendants

15   also argue the Court's failure to conduct a *Daubert* hearing as to that expert was reversible error.

16   Defendants' arguments fail for the reasons previously stated by the Court in its decision on the

17   matter (including, among other things, that neither the testimony nor evidence would assist the

18   jury more than the traditional methods of cross-examination used to challenge eyewitness

19   identification).  To that end, no *Daubert* hearing was necessary because the Court had assessed

20   the relevance of the proposed testimony.  *U.S. v. Alatorre*, 222 F.3d 1098, 1100 (9th Cir. 2000)

21   ("trial courts are not compelled to conduct pretrial hearings in order to discharge the [*Daubert*]

22   gatekeeping function"); *U.S. v. Rincon*, 28 F.3d 921, 926 (9th Cir. 1994) (district court did not err

23   in excluding eye witness identification expert as unhelpful to the trier of fact).

24   ### ii.  Scope of Testimony

25   Defendants argue the Government presented expert testimony from Special Agent

26   Jennifer Banks outside the scope of the provided notice.  However, none of the testimony

27   exceeded the reasonable scope of the notice, which clearly indicated Special Agent Banks would

28

1   testify about the geographical location where a particular phone number was used.  This would

2   necessarily require some information about how cell phones utilize and connect to any given cell

3   tower at any given time.

4                    **iii.  Spoliation of Evidence**

5             Defendants argue the Government spoiled evidence and committed several *Brady*

6   violations.  Specifically, Defendants argue the Government wilfully or negligently destroyed or

7   caused to be lost: the property stolen from the house, DNA and fingerprints from the crime scene,

8   forensic information about the firearms, Ms. Ramirez's false identification cards, and Ms.

9   Ramirez's cell phone.  While Defendants generally assert that the Government allowed the

10  destruction of "potentially exculpatory evidence," they do not sufficiently demonstrate how

11  preservation of any of these things would result in a different verdict in a new trial.  Their

12  arguments are simply speculation combined with unsupported allegations that the result would be

13  different.

14            Moreover, Defendants misstate the standard elucidated in *United States v. Sivilla*, 714

15  F.3d 1168, 1172 (9th Cir. 2013). Contrary to Defendants' assertion, the standard is not that every

16  willful or negligent destruction of evidence that "had even the potential to be exculpating to the

17  defendant" amounts to a due process violation. (Dkt. #280 at 33).  The standard is:

18        In order for destruction of evidence to rise to the level of a constitutional violation, a
          party must make two showings. First, that the government acted in bad faith, the
19        presence or absence of which turns on the government's knowledge of the apparent
          exculpatory value of the evidence at the time it was lost or destroyed.  Second, that
20        the missing evidence is of such a nature that the defendant would be unable to obtain
          comparable evidence by other reasonably available means. Another configuration of
21        this test requires the showing of bad faith where the evidence is only potentially
          useful and not materially exculpatory.  For evidence to be materially exculpatory, its
22        exculpatory nature must be apparent.
23

24  *Sivilla*, 714 F.3d at 1172 (internal citations and quotations omitted).

25            Here, there is no evidence of bad faith on the part of the Government.  Nor is the missing

26  evidence materially exculpatory.  As to the fingerprint and DNA evidence, where there are

27  multiple alleged perpetrators of a crime, lack of fingerprint and DNA evidence does not provide

28  apparent exculpatory evidence.  For example, fingerprint and DNA analysis would yield one of

1   three results: (1) no evidence, which shows the evidence was wiped clean or that it never existed,

2   (2) defendant's fingerprints/DNA, which inculpates the defendant, or (3) the fingerprints/DNA of

3   others who are not the defendant, which shows that someone else touched the item, but does not

4   prove that the defendant was definitively not present. None of these is inherently exculpatory.

5   Even if the Government had run the tests, this would not have necessarily exculpated the

6   Defendants. Thus, this argument fails.

7          As to the false identification cards in Ms. Ramirez's possession which the jail released to

8   her family friend, Defendants offer no explanation as to how the cards may have produced

9   additional suspects or alternative theories of defense. More importantly, it is wholly unclear how

10   these cards would have exculpated the Defendants. The cards have no apparently exculpatory

11   value, and there is no evidence of bad faith by the Government in releasing the cards. Therefore,

12   this argument fails.

13          As to Ms. Ramirez's cellular phone which the jail also released to her family friend,

14   Defendants contend the release of the phone left them unable to counter "claims made by the

15   Government regarding the cell phone numbers associated with different defendant's phones, the

16   activities leading up to the crime, and the actions testified to by Ms. Ramirez." (Dkt. #280 at

17   36:5-7.) Again, other than these unsupported, conclusory assertions, Defendants offer no proof

18   that the cell phone would be exculpatory to them. At most, the phone and false identification

19   cards might have provided additional impeachment material to use against Ms. Ramirez, but that

20   does not satisfy the test of *Sivilla*, 714 F.3d at 1172.

21                          **iv.  *Brady* Violations**

22          The Court next examines whether the Government's failure to preserve and disclose the

23   false identification cards and cell phone constituted a *Brady* violation. "There are three elements

24   of a *Brady/Giglio* violation: (1) the evidence at issue must be favorable to the accused, either

25   because it is exculpatory, or because it is impeaching; (2) that evidence must have been

26   suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued."

27   *United States v. Wilkes*, 662 F.3d 524, 535 (9th Cir. 2011) (internal citations omitted). Prejudice

28

1  ensues "only if there is a reasonable probability that, had the evidence been disclosed to the
2  defense, the result of the proceeding would have been different." *United States v. Kohring*, 637
3  F.3d 895, 902 (9th Cir. 2011).  There is a reasonable probability of prejudice when suppression of
4  evidence undermines confidence in the outcome of the trial. *United States v. Olsen*, 704 F.3d
5  1172, 1183 (9th Cir. 2013).  Thus, "[t]he question is not whether the defendant would more likely
6  than not have received a different verdict with the evidence, but whether in its absence he
7  received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.*  "The
8  mere possibility that an item of undisclosed information might have helped the defense, or might
9  have affected the outcome of the trial, does not establish 'materiality' in the constitutional
10  sense."[9] *Barker v. Fleming*, 423 F.3d 1085, 1099 (9th Cir. 2005).  To determine prejudice, "the
11  withheld evidence must be analyzed in the context of the entire record." *Olsen*, 704 F.3d at 1184
12  (internal quotations omitted).

13      Here, in the context of the entire record, even if the jury completely disregarded the
14  entirety of Ms. Ramirez's testimony because she is a liar as Defendants assert, the result of the
15  proceeding would not have been different.  Defendants conducted a vigorous cross-examination
16  of Ms. Ramirez, which discredited part, if not all, of her testimony.  Defendants re-emphasized
17  her lack of credibility through the discrepancies in her testimony, her potential jealousy, and her
18  plea agreement with the Government.  Defendants also reminded the jury that Ms. Ramirez
19  admitted on the stand that she had lied to the jury during the trial.  As Ms. Ramirez was already
20  considerably impeached, another basis for impeachment (based on false identification cards and
21  her cell phone) would not have changed the result.  Accordingly, the Government's failure to
22  preserve and disclose the cards and phone does not constitute a *Brady/Giglio* violation.

23                          **v.  Other Misconduct**

24      Defendants argue the Government improperly influenced witnesses with tainted crime
25  scene photographs. (Dkt. #280 at 38:11-27.)  This argument is meritless as the Court ruled neither

26

27  [9] "The terms 'material' and 'prejudicial' are used interchangeably in *Brady* cases. Evidence is not
   'material' unless it is 'prejudicial,' and not 'prejudicial' unless it is 'material.' Thus, for *Brady*
28  purposes, the two terms have come to have the same meaning." *Olsen*, 704 F.3d at 1184 n. 5.

1  witness could make an in-court identification based upon the potential taint.  Accordingly, no
2  prejudice ensued.

3        Defendants argue the Government made several late disclosures, which "made it
4  impossible for counsel to effectively litigate." (Dkt. #280 at 39:1-28.)  Defendants offer a laundry
5  list of alleged late disclosures and untimely documents, but offer no support as to why any of
6  these items is material, exculpatory, or impeaching.  Moreover, the Court excluded admission of
7  some of the listed items (e.g., Frank Garcia's alias and 911 call, in-court identifications);
8  therefore, no prejudice could have ensued from any alleged late disclosure.  The Court has
9  discussed above why other items were immaterial or resulted in no prejudice (e.g., excluding the
10  eyewitness expert, release of false identification cards and Ms. Ramirez's cell phone).  Further,
11  some of the items listed as late disclosures were disclosed well in advance of trial, or were
12  included on the Government's exhibit list (e.g., T-Mobile records, Arizona DMV records,
13  Gaytan's wallet and its contents, and Gaytan's phone record).  Other items were disclosed prior to
14  shortly before or during trial (e.g., "302" reports regarding statements made by Ms. Ramirez).[10]
15  Defendants have failed to carry their burden to show materiality, bad faith, prejudice, or any other
16  reason to grant a new trial based on the late disclosures.

17        Finally, Defendants argue the Government committed misconduct in closing arguments by
18  vouching, burden-shifting, and commenting on Defendants' silence.  Any supposed violations
19  were quickly addressed by the Court and amounted to harmless error, at most.  Accordingly, the
20  Court denies the motion for new trial based on government misconduct.

21              **3.  Court's Denial of Severance**

22        Gaytan argues the Court's denial of his repeated requests for severance resulted in
23  prejudice because he was unable to introduce Andrade's cell phone records to show Gaytan was

24

25  ───────────────
26  [10] Although the Court understands Defendants' frustration over this late disclosure, the
   Government cannot turn over what it does not have.  Ms. Ramirez revealed the alleged fifth
   conspirator information on the eve of trial, after accepting a plea agreement.  The Court finds the
27  Government promptly and timely disclosed that information upon receiving it, and cannot be
   faulted for Ms. Ramirez's late provision of information.
28

17

1   not the third perpetrator. Although newly packaged, these are the same arguments Gaytan made
2   extensively through pre-trial motions. The result remains the same. Gaytan's rights were not
3   impinged by being tried along-side Andrade. He is not entitled to severance merely because he
4   may have had a better chance of acquittal in a separate trial. *See Zafiro v. United States*, 506 U.S.
5   534, 540 (1993). Gaytan does not have a constitutional right to a severed trial to be able
6   exculpate himself by inculpating Andrade. *See United States v. Johnson*, 297 F.3d 845, 858 (9th
7   Cir. 2002). Gaytan may not waive Andrade's constitutional rights to benefit himself. Andrade
8   likely would have asserted his own Fifth Amendment right against self-incrimination if called to
9   testify in any severed trial. Severance would not have addressed the issues Gaytan raises, and
10  accordingly the Court declines to grant a new trial on this basis.

### 4. Cumulative Error

12      Defendants argue that even if each individual basis noted in the motions is insufficient to
13  warrant a new trial, taken cumulatively the errors warrant a new trial. The Court disagrees.

### C. Duplicative Convictions under 18 U.S.C. § 924(c)

15      Defendants argue Count Four of the indictment should be dismissed as multiplicitous.
16  (Dkt. #283 at 10:14-13:2.) Although Defendants concede that conspiracy and the substantive
17  crime are not the same predicate offense for double jeopardy purposes, they contend one discrete
18  crime of violence cannot give rise to multiple § 924(c) convictions because that constitutes
19  double jeopardy. Additionally, at oral argument Defendants asserted the two convictions, even if
20  charged as two predicate offenses, were based on the same single discrete act (i.e. the same crime
21  of violence furthering the same unlawful activity) and thus are duplicative.

22      The Government counters that this issue was litigated at the pre-trial phase and "[b]oth the
23  Magistrate Judge and this Court correctly determined the allegations contained in the indictment
24  were not multiplicative for *charging purposes*." (Gov'ts Opp., Dkt. #295 at 9) (emphasis added).
25  At oral argument, the Government asserted that the two § 924(c) convictions were based on two
26  separate predicate offenses: conspiracy and the substantive offense (i.e., the Travel Act violation).
27  Relying on Ninth Circuit precedent, the Government reasoned that (1) the substantive crime and

28

conspiracy to commit that crime are not the same offense for double jeopardy purposes, and (2) both the substantive crime and conspiracy to commit that crime each may support a separate § 924(c) conviction. Thus, the Government concludes that both counts two and four (the gun enhancements) must stand because the jury convicted the Defendants on two separate predicate offenses: conspiracy and the substantive offense.

The Court declined to dismiss Count Four at the pre-trial stage because it was appropriately *charged*. However, the procedural posture of this case has changed because the jury now has *convicted* the Defendants. Therefore, the Court must determine whether the two convictions are duplicative as a matter of law, while respecting the jury's factual findings and guilty verdicts.

In relevant part, 18 U.S.C. § 924(c) provides: "[A]ny person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" and brandishes the firearm shall be sentenced to "a term of imprisonment of not less than 7 years." Additionally, "[i]n the case of a second or subsequent conviction under [§ 924(c)]" the person shall be "sentenced to a term of imprisonment of not less than 25 years" to run consecutive to any other term of imprisonment imposed. *Id.*

"It is now well established that a substantive crime and a conspiracy to commit that crime are not the same offense for double jeopardy purposes." *United States v. Lopez*, 37 F.3d 565, 570 (9th Cir. 1994), *vacated on other grounds sub nom. Fuentes v. United States*, 516 U.S. 1022 (1995) (internal citations, quotations, and alterations omitted). Moreover, both the substantive crime and a conspiracy to commit that crime each may support a separate § 924(c) conviction. *Id.*

Likewise, multiple acts or separate instances of conduct can support multiple § 924(c) enhancements. In *Fontanilla*, the Ninth Circuit held two separate predicate offenses for murder and assault were properly charged as separate crimes, and each predicate offense could support an enhancement under § 924(c). *United States v. Fontanilla*, 849 F.2d 1257, 1259 (9th Cir. 1988). Fontanilla was convicted on one count of murder, one count of assault, and two related § 924(c) counts for shooting and killing one man and shooting and wounding a second. *Id.* at 1257. The

1   *Fontanilla* court focused on whether the murder and assault were properly charged as separate

2   crimes of violence. *Id.* at 1259.  Similarly, in *United States v. Beltran-Moreno*, the court held two

3   convictions for possession of a firearm on two different dates with intent to distribute two

4   different drugs could support two § 924(c) enhancements. 556 F.3d 913, 916-17 (9th Cir. 2009).

> [A] defendant may be convicted and sentenced for multiple violations of § 924(c)
> so long as "each 924(c)(1) count [is] supported by a separate predicate offense." .
> . . Whether or not one predicate offense is independent from another depends on
> whether the two offenses would be independent for double jeopardy purposes
> under the Blockburger test. *See United States v. Castaneda*, 9 F.3d 761, 765 (9th
> Cir.1993) ("[I]f the elements of the two predicate offenses are different, each may
> form the basis of a firearm count notwithstanding that both offenses stem from the
> same set of facts."); *cf. Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180,
> 76 L.Ed. 306 (1932).  In this case, the two § 924(c) counts respectively charged
> the defendants with possessing a firearm on March 12, 2005 in furtherance of
> their possession with intent to distribute methamphetamine, . . . and with
> possessing a firearm on June 22, 2005 in furtherance of their possession with
> intent to distribute cocaine, . . .; both firearm counts also incorporated the drug
> conspiracy count to which the defendants pled guilty.  As this court has squarely
> held, "charging a defendant with separate counts [of 'possession with intent to
> distribute'] for different controlled substances is not multiplicitous and does not
> violate double jeopardy.

14   *Id.* at 916.[11]

15      *United States v. Andrews*, a case relied upon by the Government at oral argument,

16   supports this general proposition that multiple predicate offenses can support multiple § 924(c)

17   enhancements.  In *Andrews*, two defendants were convicted of four separate crimes, each

18   involving a different victim: one count of second degree murder, one count of aiding and abetting

19   the second degree murder of a different victim, and two counts of aiding and abetting the

20   voluntary manslaughter of two other victims. 75 F.3d 552, 554 (9th Cir. 1996).  In addition, each

21   defendant was convicted of four § 924(c) enhancements based on the use of a gun in connection

22   with each crime. *Id.*  Thus, *Andrews* does not address the specific situation here, involving gun

23   enhancements for charges of a substantive crime and conspiracy to commit that crime.

24

25

---

26   [11] The *Beltran-Moreno* court's language ("both firearm counts also incorporated the drug

27   conspiracy count to which the defendants pled guilty") and holding suggest that conspiracy to commit a crime is incorporated into the actual completed crime for § 924(c) enhancement

28   purposes, likely because there is only one discrete act to support an enhancement for both the conspiracy and the substantive crime.

1    However, persuasive precedent supports the notion that the single use of a gun that results

2    in more than one offense supports only a single § 924(c) enhancement. *United States v. Wilson*,

3    160 F.3d 732, 749 (D.C. Cir. 1998). In *Wilson*, the court held where "there was only one use

4    (albeit a repeated use) of a firearm," only one § 924(c) enhancement could stand. *Id.* The court

5    specifically rejected the Government's reliance on the Ninth Circuit's *Andrews* decision to

6    support the multiple § 924(c) charges because in *Andrews* each § 924(c) enhancement related to a

7    separate and discrete act. *Id.* at 750 n.21.

8        The Ninth Circuit has not explicitly addressed whether a single discrete act, giving rise to

9    charges for both conspiracy and a substantive crime, could also support two § 924(c)

10   enhancements. That is the case here, which apparently is a matter of first impression in this

11   Circuit. In *Fontanilla*, *Beltran-Moreno*, and *Andrews*, multiple discrete acts supported multiple

12   predicate offenses. Here, however, only one discrete act (a single burglary to further extortion)

13   supports two predicate offenses (conspiracy and the substantive crime) and two § 924(c) offenses.

14   Count One of the Indictment, charging the Defendants with Conspiracy to Travel in Interstate

15   Commerce in Furtherance of Racketeering Activity, alleges the Defendants:

16       did agree and conspire together and with others . . . to travel in interstate commerce . .
17       . with the intent to *commit a crime of violence, that is, residential burglary,* in
         violation of Nevada Revised Statutes (NRS) section 205.060, *to further an unlawful*
18       *activity, that is extortion,* in violation of NRS section 205.320, *and thereafter*
         *committed and attempted to commit the crime of violence to further such unlawful*
19       *activity.* . . .

20   (Dkt. #1 at 2:1-6; emphasis added.) Count Three of the Indictment, charging the Defendants with

21   Interstate Travel in Aid of Racketeering Activity, contains the nearly identical allegation, that the

22   Defendants:

23       traveled in interstate commerce . . . with the intent *to commit a crime of violence, that*
24       *is, residential burglary,* in violation of Nevada Revised Statutes (NRS) section
         205.060, *to further an unlawful activity, that is extortion,* in violation of NRS section
25       205.320, *and thereafter committed and attempted to commit the crime of violence to*
         *further such unlawful activity.*
26
     (*Id.* at 5:1-6; emphasis added.) Count Two (the gun enhancement related to the Conspiracy
27
     count) contained similar language, charging that the Defendants "during and in relation to the
28

1   crime of violence charged in Count One of this indictment, knowingly and intentionally used and

2   carried firearms . . . and at least one of those firearms was brandished." (*Id.* at 4:10-17.)  Count

3   Four (the gun enhancement related to the Travel Act violation) contained similar language,

4   referring to the "crime of violence charged in Count Three."  Thus, both 924(c) counts are based

5   on the single residential burglary.

6         Most importantly, the Jury Instructions likewise focused on the single residential burglary.

7   In relevant parts, the jury was instructed to determine whether the Government proved that:

8         Count One (Conspiracy): "there was an agreement between two or more persons to travel

9         in interstate commerce with the intent to commit *a crime of violence (charged in the*

10        *Indictment to be residential burglary)* to further the unlawful activity (charged in the

11        Indictment to be extortion)." (Dkt. #260 at 17:11-14.)

12        Count Two (924(c) Enhancement): "the defendant committed *the crime of violence as*

13        *charged in Count One* of the Indictment; and knowingly used or carried the firearm during

14        and *in relation to that crime*; and the defendant knowingly brandished the firearm during

15        and *in relation to that crime*." (*Id.* at 19:5-10.)

16        Count Three (Travel Act): "the Defendant travelled in interstate commerce with the intent

17        to commit *a crime of violence (charged in the Indictment to be residential burglary)* to

18        further the unlawful activity (charged in the Indictment to be extortion). (*Id.* at 20:3-6.)

19        Count Four (924(c) Enhancement): "the defendant committed *the crime of violence as*

20        *charged in Count Three* of the Indictment; and knowingly used or carried the firearm

21        during and *in relation to that crime*; and the defendant knowingly brandished the firearm

22        during and *in relation to that crime*." (*Id.* at 23:5-10.)

23  Thus, only one discrete act of violence ("charged in the Indictment to be residential burglary")

24  resulted in convictions on two gun enhancements.

25        The Government asks the Court to focus on the charged predicate offenses (i.e. conspiracy

26  and the Travel Act violation), and ignore that only one crime of violence (residential burglary)

27  occurred.  However, it was the Government that at all times from Indictment through the Jury

28

1  Instructions repeatedly defined the "crime of violence" as a residential burglary and linked the §

2  924(c) enhancements to that crime of violence.  Based on the testimony at trial, only one

3  residential burglary occurred, rather than multiple discrete acts like was the case in *Fontanilla*,

4  *Beltran-Moreno*, and *Andrews*.  The facts of this case, as presented in the Government's case-in-

5  chief, are more analogous to *Wilson*.  As in *Wilson*, here there was only one discrete act

6  (residential burglary) supporting two underlying predicate offenses.  By the Government's own

7  definitions in the Indictment and Jury Instructions, there was only one crime of violence for both

8  Counts Two and Four (i.e. the one residential burglary).  The Government could have attempted

9  to identify two different crimes of violence, but chose not to.  The Court recognizes that this may

10  be a result of inarticulate wording in the drafting of the Indictment and proposed Jury

11  Instructions.  But the Court cannot penalize Defendants for the word choices the Government

12  proposed and to which the Government did not object. (*Compare* Gov'ts Proposed Jury

13  Instructions (Dkt. #204), *with* Jury Instructions (Dkt. #260).)

14  Accordingly, the jury's determination supports only one conclusion: the same discrete

15  act/crime of violence (residential burglary) resulted in the Defendants' convictions on both

16  Counts Two and Four.  Thus, one of the Defendants' § 924(c) convictions must be vacated.

17  *Wilson*, 160 F.3d at 749.  For these reasons, the Court vacates Gaytan's and Andrade's

18  convictions on Count Four as duplicative of their convictions on Count Two.

19  **IV.   CONCLUSION**

20  **IT IS THEREFORE ORDERED** that Defendant Julian Gaytan's Renewed Motion for

21  Judgment of Acquittal or, in the Alternative, Motion for New Trial (Dkt. #280) is **DENIED**.

22  **IT IS FURTHER ORDERED** Defendant Joseph Andrade's Motion for Judgment of

23  Acquittal (Dkt. #283) is **GRANTED in part**, and **DENIED in part**.  Because Gaytan joined in

24  that motion, he is entitled to the same benefits arising therefrom.

25  / / / /

26  / / / /

27  / / / /

28

1   **IT IS FURTHER ORDERED** that Defendants Joseph Andrade's and Julian Gaytan's

2   convictions on Count Four of the Indictment are **VACATED as a matter of law**.

3   Dated this 7th day of January, 2014.

4

5   _____

6   ANDREW P. GORDON
    UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28